USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8-22-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CARLOS RAMOS,

                        Petitioner,

           -v-

R. CUNNINGHAM, SUPERINTENDENT,
WOODBOURNE CORRECTIONAL FACILITY,

                        Respondent.

------------------------------------------------------------X

15 Civ. 3755 (PAE) (GWG)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      Some 30 years after his state-court conviction for the 1983 sodomy of a young child, Carlos Ramos, proceeding *pro se*, filed a petition for a writ of habeas corpus (the "Petition") under 28 U.S.C. § 2254. Dkts. 2, 31.[1] On November 10, 2015, respondent R. Cunningham, the superintendent of Woodbourne Correctional Facility, moved to dismiss. Dkt. 15. On April 6, 2016, the Court referred the petition to Magistrate Judge Gabriel W. Gorenstein. Dkt. 30. On July 20, 2016, Judge Gorenstein issued a Report and Recommendation, Dkt. 32 (the "Report"), which construed Ramos's letters, *see* Dkts. 22–26, 28–29 ("Opposition"), as an opposition to the motion, and recommended granting the motion to dismiss the Petition as untimely. On August 5, 2016, Ramos filed objections to the Report, which, in a letter filed on August 10, 2016, he amplified upon and corrected. Dkts. 33–34 ("Objections").

---

[1] The Petition was originally filed as Dkt. 2, but was uploaded to the ECF system as 16 separate files. Later, the files constituting the Petition were merged into a single file and filed on ECF as Dkt. 31. For ease of reference, this Opinion refers to the unified pagination provided in Dkt. 31 when it cites the Petition.

For the reasons set forth below, the Court adopts the Report in its entirety and dismisses the Petition as untimely.

## I.     Background[2]

In May 1985, Ramos was convicted of one count of sodomy in the first degree, after a four-day jury trial in New York State Supreme Court (Bronx County).  The indictment charged that Ramos, on an unspecified date in October 1983, had committed forcible sodomy on a child, W.B., who was the son of Ramos's ex-girlfriend.  The prosecution's evidence at trial included testimony by W.B., age 8 at the time of trial, and W.B.'s older brother, G.B.  The defense case largely attempted to discredit this testimony.  The defense also suggested that, depending on when in October 1983 the sodomy was said to have taken place, it might have been impossible for Ramos to have committed the crime, because—as a stipulation received in evidence reflected—Ramos had been incarcerated between October 12, 1983 and November 14, 1983.  During the trial, Ramos absconded.  He was convicted in absentia, and sentenced to a prison term of between five and 15 years.  In May 2010, after being apprehended, Ramos was extradited to New York from North Carolina.

Ramos's petition makes two related claims for relief: first, that he is actually innocent; second, that his trial counsel was ineffective.  Petition at 7.  Ramos's claim of actual innocence reprises his trial claim to have been incarcerated during the time period within which the crime allegedly occurred.  Ramos's ineffective assistance of counsel claim is derivative of his claim of actual innocence:  Ramos appears to fault his trial counsel for not proving or securing a stipulation that his incarceration began earlier in October 1983 (by October 8) than the trial

---

[2] The following summary of the facts is drawn from the detailed account provided in the Report and from the Court's review of the Petition and the case record.

stipulation (which dated the incarceration as beginning October 12) stated.  *See, e.g.*, Opposition, Dkt. 22, at *14, Dkt. 23, at *7;[3] Petition at 7.

Shortly after Ramos filed his petition, the Court issued an order directing him to file an affirmation alleging facts showing why his petition should not be denied as time-barred, Dkt. 6, because Ramos was convicted before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and, as a result, had until April 24, 1997 to file a timely petition.  *See Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998).  In response, on August 18, 2015, Ramos filed an affirmation.  Dkt. 7 ("Affirmation").  On, November 10, 2015, respondent filed the instant motion to dismiss the petition as time-barred.  Dkt. 15.

## II.     Discussion

After a magistrate judge has issued a Report and Recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  To accept the portions of a report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record."  *Acevedo v. Lempke*, No. 10 Civ. 5285 (PAE) (HBP), 2014 WL 4651904, at *3 (S.D.N.Y. Sept. 17, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009)).  When a timely and specific objection has been made, the court is obligated to review the contested issues *de novo*.  *See id.*; Fed. R. Civ. P. 72(b)(3); *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998).  But when the objections simply reiterate previous arguments or make only conclusory statements, the court should review the Report and Recommendation for clear error.  *Dickerson v. Conway*, No. 08 Civ. 8024 (PAE) (FM), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *see Kirk v. Burge*, 646 F. Supp. 2d 534, 538

---

[3] For ease of reference, when a document's own pagination is unclear, the Court refers to the ECF pagination, noted by an asterisk.

3

(S.D.N.Y. 2009) (collecting cases). This is so even in the case of a *pro se* petitioner. *Cf. Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

As the Report correctly observed, but for his claim of actual innocence, Ramos's petition for habeas corpus relief would be untimely. Claims of actual innocence provide an exception to the statute of limitations for habeas petitions contained in 28 U.S.C. § 2244(d). *See McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013).

There are, however, two important limitations on the ability of an actual innocence claim to excuse the untimely filing of a habeas petition. First, because the Supreme Court has to date not held that "a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence," *id.* at 1931, a petition must also bring a claim of constitutional error: The actual innocence claim thus serves as a "gateway" through which a petition that brings a constitutional claim may pass despite the expiration of the statute of limitations. *Id.* Second, the claim of actual innocence must be credible and compelling: The petitioner must "persuade[] the district court, that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 1928 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The claim of actual innocence must be credible and compelling, consisting of new reliable evidence that was not presented at trial that the petitioner demonstrates makes it more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt. *See Rivas v. Fischer*, 687 F.3d 514, 540–41 (2d Cir. 2012).

Considered in light of this framework, Ramos has nominally articulated, along with his claim of actual innocence, a constitutional claim—ineffective assistance of counsel.[4] In theory,

---

[4] To be sure, on the merits, this claim appears anemic. The main lapse to which Ramos points is his trial counsel's ostensible failure to prove or to secure a fact stipulation establishing that his incarceration during October 1983 lasted four days longer than the stipulation at trial reflected.

4

therefore, if Ramos' actual innocence claim were credible and compelling, it could provide a gateway excusing the untimely petition and permitting the ineffective assistance claim to be heard.

However, for the reasons Judge Gorenstein articulated in his thorough and thoughtful report, Ramos's petition falls far short of credibly claiming actual innocence. And Ramos's objections to the Report on this point merely repeat his previous arguments, which the Report carefully considered and rejected. The objections recapitulate, for example, (1) Ramos's partial alibi that he was incarcerated starting October 8, 1983 through the end of that month, thereby narrowing the window within October 1983 during which he was at liberty to have committed the crime by four additional days from the October 12, 1983 date reflected in the trial stipulation;[4] (2) Ramos's argument that a 2014 letter from the Bronx District Attorney in Ramos's state post-conviction proceedings referred to W.B., whose birthday is October 13, 1976, as age 7 at the time the crime occurred, which if treated as accurate, would suggest that the crime occurred after October 13, 1983, when Ramos was incarcerated;[5] and (3) Ramos's arguments why his testimony at a new trial would be credible. See Objections, Dkt. 33, at *1–6 and Dkt. 34; Report at 10–13. Ramos also objects that the Report did not address his assessments of various snippets of trial testimony bearing on the time period within which the crime occurred. Objections, Dkt.

---

But, because the indictment alleged only that Ramos's sodomy of W.B. occurred sometime in October 1983, even the stipulation that Ramos imagines would have left him at large during the first week of October 1983 and at liberty to commit the offense.

[5] In fact, to the extent the district attorney's letter referred to W.B. as age 7 at the time of the offense, it did not recite any foundation for so stating, and thus was unreliable to establish that W.B. had turned 7 by the day the offense occurred. In any event, the letter did not indicate that, in describing W.B. as age 7 as of the offense, it was speaking literally, as opposed to describing W.B.'s nearest age, which, at all points in October 1983, was age 7.

33, at *4. In fact, the Report did so. *See* Report at 9–11. In any event, Ramos's critiques of trial evidence are not new evidence of actual innocence. The Report therefore reveals no clear error.

Even reviewed *de novo*, the Report does not reveal any error at all. Mindful of the duty to interpret *pro se* petitioners' submissions as making the strongest arguments they suggest, *see, e.g.*, *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), the Report sorted the evidence Ramos claims to be new into four types and carefully assessed each: (1) records from correctional facilities; (2) records from family court proceedings; (3) Ramos's own testimony; and (4) arguments about how this evidence would bear on the testimony at his trial. The Report concluded that, viewed separately or together, Ramos's new evidence does not supply credible evidence of actual innocence. *See* Report at 7–13. On its independent review, the Court agrees. Far from being more likely than not that no reasonable juror, presented with the new evidence, would vote to convict Ramos beyond a reasonable doubt, *Rivas*, 687 F.3d at 540–41, the new evidence, fairly considered, does not call Ramos's guilt into question at all.

Ramos claims first that correctional records prove he was incarcerated beginning October 8, 1983, thereby narrowing the window within October 1983 during which he was at liberty and could have committed the crime. He points, for example, to a New York City Police Department record indicating he was arrested at 11:30 p.m. the night of October 8, 1983, Report at 10; Objections, Dkt. 33, at *8, and returned on bench warrants between October 8 and October 12, *see* Report at 10; Opposition, Dkt. 22, at *24–25; Objections, Dkt. 33, at *9–10. Juxtaposing this evidence against the trial testimony of W.B.'s brother, G.B., that the crime occurred "a few weeks before Halloween," Petition at 484, and against W.B.'s "yes" answer on cross-examination to the proposition that the crime occurred a "couple" weeks before Halloween,

6

Petition at 514, Ramos claims that the correctional records prove that he was incarcerated at the time W.B. and G.B. claimed that he orally sodomized W.B., *see, e.g.*, Objections, Dkt. 33, at *4.

As the Report properly concluded, Ramos's evidence proves nothing of the sort. It does not make it "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt," *Rivas*, 687 F.3d at 541 (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). The Indictment did not pin down the date in October on which Ramos had sexually assaulted W.B. Petition at 699–703. And neither W.B. nor G.B., at trial, committed to a firm date on which the sodomy had occurred. Their testimony, without purporting to be precise as to date, merely situated the incident some weeks before Halloween, October 31. A reasonable juror would easily square this testimony with the possibility that the offense occurred in the first week of October, when, even considering the evidence in the light most favorable to Ramos, he was at liberty. A reasonable juror would not have understood the young witnesses W.B. and G.B., who testified to being 8 and 10 years old, respectively, at the time of trial, and who described an incident that had occurred some 19 months earlier, to pinpoint the date of Ramos's attack as occurring after the first week of October.

Further, under the circumstances under which W.B.'s claim of Ramos's sodomy was investigated, a jury would have appreciated why the date of that act had been lost to history. A social worker testified that W.B. reported the incident to her on November 2, 1983, shortly after he and G.B. were placed into foster care on October 31, 1983, Petition at 426–31, and G.B. testified that he reported the incident to her then as well, prompting her to interview W.B., *id.* at 481. Soon after, she reported the children's claims to a worker at the state child welfare agency. *See id.* at 432–34. But despite these efforts, there was, for many months, no official investigation. Much later, not having heard from the district attorney's office, the social worker

followed up with the agency and learned that no report to the district attorney had been made. *Id.* The social worker herself then made such a report—on July 4, 1984. *Id.* at 433. Consistent with this, the detective who led the investigation testified that the incident was first reported to him in July 1984 and that he began investigating it in August 1984, *id.* at 400, some 10 months after it occurred. Under these circumstances, a reasonable juror would not have expected W.B. and G.B. to recall the precise date of the incident, and therefore would not have attached importance to evidence that Ramos was incarcerated from October 8, 1983 forward. The offense described by W.B. and G.B. could easily have occurred beforehand.

As for Ramos's other categories of evidence, as the Report persuasively concluded, these fall far short of the showing of actual innocence needed to provide a gateway for his claims to be heard on the merits. The Court understands Ramos to argue, for example, that documents from family court proceedings could have been used indirectly to cast doubt on the trial testimony of W.B. and G.B. That is in part because, Ramos argues, those documents suggest that the children's mother would not have likely let him be alone with her children given her poor relationship with him. *See* Affirmation, Dkt. 7, at *9. Ramos further argues that these documents would have supported a defense that the mother had a motive to coach the children into falsely accusing him of sodomy, specifically, to assist her to obtain custody of a different, younger child she had with Ramos, X.R., and/or to obtain increased welfare benefits. *See, e.g.*, Opposition, Dkt. 22, at *9, *15–16; Affirmation, Dkt. 7, at *8.

But the inferences that Ramos proposes to draw from this evidence are speculative at best, not solid. The mother did not testify at trial; Ramos has not identified any evidence that she in fact coached W.B. or G.B. to falsely implicate him; and the documents do not undermine the heart of the prosecution's case: the testimony of G.B. and W.B. The jury was entitled to credit

W.B.'s and G.B.'s testimony that their mother was not at home at the time of Ramos's crime. Petition at 511, 485.  Moreover, the circumstances under which W.B. and G.B. reported the crime to the social worker strongly undermine Ramos's theory that she instigated them to do so. As the social worker and G.B. testified, the two boys reported the crime to her in interviews just days after W.B., G.B., and X.R. had been removed from the mother's custody and placed into foster care by a state child protective agency because the mother had been using illegal narcotics including "angel dust" and had been hospitalized frequently.  *See* Petition at 426–31.  It is relevant, too, that Ramos's theory that the mother had a motive to cause the boys to fabricate a claim against him is not new.  Ramos's attorney made just this argument in summation, urging the jury that the mother had been motivated to "get back at" Ramos.  *See* Petition at 537–41.

Ramos also imagines that his testimony at a new trial might carry the day, presumably referring to his general denial of committing sodomy upon W.B.  *See* Report at 11–13; Opposition, Dkt. 28, at *1; Objections, Dkt. 33, at *4.  But Ramos's denial of guilt is not "new" evidence.  Ramos was equally able to give just such evidence in his defense at trial; instead, he elected to flee.  And as the Report concluded, Ramos's self-serving denial of guilt is not credible or compelling proof of innocence.  It is the sort of conclusory claim that does not satisfy the actual innocence standard.

In sum, having been apprehended after years of flight, and now facing a long prison term, Ramos apparently wishes to relitigate the jury's verdict. But the evidence he has adduced in his Petition falls far short of credibly supporting a gateway claim of actual innocence.  It fails, therefore, to excuse Ramos's untimely petition.

Accordingly, the Court adopts the Report in its entirety.  Whether measured under a clear error standard or *de novo*, the Report is thorough and convincing.

## CONCLUSION

For the foregoing reasons, the Court grants the motion to dismiss and denies Ramos's petition for a writ of habeas corpus. The Court also denies Ramos's request, in Dkt. 34, for an extension to file a new addendum to his objections. The Clerk of Court is directed to mail a copy of this Opinion to Ramos.

The Court declines to issue a certificate of appealability. Ramos has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See* 28 U.S.C. § 2253(c)(2); *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2005). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 15 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 22, 2016
       New York, New York